IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

| | |
|---|---|
| **BONITA K. HOLTZAPFEL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 5:04-0334** |
| ) | |
| **JO ANNE B. BARNHART,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401-433. By Standing Order, this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Motion for Summary Judgment and Defendant's Motion for Judgment on the Pleadings.

The Plaintiff, Bonita K. Holtzapfel (hereinafter referred to as "Claimant"), filed an application for DIB on October 19, 2000, alleging disability as of July 26, 1996, due to problems with finger, severe burns on both feet, and mental limitations. (Tr. at 113-15, 52, 62.) The claims were denied initially and upon reconsideration. (Tr. at 50-51.) Claimant requested a hearing before an Administrative Law Judge (ALJ), which was held on September 9, 2002, before the Honorable John Murdock. (Tr. at 559-625.) A supplemental hearing was held on June 3, 2003, at which a psychological medical expert testified. (Tr. at 490-558.) By decision dated June 23, 2003, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 13-27.) The ALJ's decision became the

final decision of the Commissioner on February 20, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 5-7.) On April 7, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520©). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and

prior work experience. 20 C.F.R. § 404.1520(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset of disability.[1] (Tr. at 18.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of burns to both feet and was status-post amputation of the tip of the left index finger. (Tr. at 20.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 20.) The ALJ then found that Claimant had the residual functional capacity for sedentary work with additional limitations, including no climbing of ladders, ropes or scaffolds; only occasional balancing; no using foot pedals; no performing fine manipulation with the left dominant hand; and avoiding all exposure to wetness and hazards such as machinery and heights. (Tr. at 24.) The ALJ thus found that Claimant was unable to perform any of her past relevant work. (Tr. at 24.) The ALJ found, based upon the testimony of a Vocational Expert (VE), that Claimant could perform a significant number of jobs in the regional and national economy, including cashier seated on a stool; stationary security guard; and surveillance system monitor. (Tr. at 25.) On this basis, benefits were denied. (Tr. at 25-27.)

---

[1] Claimant's insured status for purposes of DIB expired on December 31, 2000. To be entitled to disability insurance benefits, a claimant must have enough social security earnings to be insured for disability as described in 20 C.F.R. § 404.130. See 20 C.F.R. § 404.315 (2004). Claimant's insured status expiration date means that she had to establish disability on or prior to this date to be entitled to benefits. Claimant does not appear to dispute this finding. The undersigned notes, however, that the ALJ clearly considered/noted evidence which was beyond the date last insured.

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

Claimant's Background

Claimant was born on June 4, 1956, and was 46 years old at the time of the administrative hearings. (Tr. at 113.) Claimant completed the tenth grade and later obtained a G.E.D. (Tr. at 126, 566.) In the past, she worked as a daycare worker and a recycling equipment operator. (Tr. at 121, 600.)

The Medical Record

The Court has reviewed all evidence of record, including the medical evidence, and will discuss it below as it relates to Claimant's arguments. As Claimant's arguments focus solely on her mental impairments, however, no physical medical evidence will be discussed herein.

Claimant's Challenges to the Commissioner's Decision

Claimant contends that the ALJ erred in: (1) determining that Claimant did not have a medically determinable mental impairment; and (2) placing controlling weight on the testimony of the Medical Expert who testified at the administrative hearing despite the other contrary evidence of record. The Commissioner asserts that these arguments are without merit and that the ALJ's decision is supported by substantial evidence. The undersigned notes that Claimant's arguments are closely intertwined and therefore considers them together as one argument.

ALJ's Assessment of Claimant's Mental Impairment and Evaluation of the Evidence

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a).[2] First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a©) and 416.920a©). Those sections provide as follows:

> ©) *Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent

---

[2] These Regulations were substantially revised effective September 20, 2000. *See* 65 Federal Register 50746, 50774 (August 21, 2000).

to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[3] Fourth, if the claimant's impairment(s)

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a

is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In his decision, the ALJ determined that Claimant's alleged mental impairments were not severe. (Tr. at 22.) After reviewing the evidence of record, including the testimony of Dr. Carter, the medical expert who testified at the administrative hearing, the ALJ noted that Claimant was not currently in mental health treatment and did not take any medications for a mental impairment. (Tr. at 22.) He found that Claimant had mild restriction of activities of daily living, noting that she "dresses herself, cooks, bathes, drives, cleans, does her own laundry, and grocery shops." (Tr. at 22.) He found that she had mild difficulties in maintaining social functioning, mild difficulties in maintaining

---

continued need for such an arrangement.

concentration, persistence, or pace; and experienced no episodes of decompensation. (Tr. at 22.) With regard to the last three areas of functioning, the ALJ cited no evidence in support of his ratings. The ALJ concluded that "[b]ased on the medical evidence of record and Dr. Carter's testimony, the undersigned finds the claimant does not have a severe mental impairment." (Tr. at 22.)

Claimant was evaluated by psychologist Tim Brooks, M.A., on July 27, 1999. (Tr. at 352-57.) This consultative evaluation was apparently scheduled at the request of the Disability Determination Service. (Tr. at 352.) It was not performed at the request of Claimant's attorney. Mr. Brooks noted that Claimant reported no history of psychiatric treatment, but she reported crying spells, disturbed sleep and appetite, and having little to no energy. (Tr. at 352.) Claimant's mood was depressed with anxious features, her judgment was markedly deficient, and her concentration was moderately deficient. (Tr. at 354.) Her immediate and recent memory was within normal limits and her remote memory was fair to good. (Tr. at 354.) Mr. Brooks diagnosed adjustment disorder with mixed anxiety and depressed mood and borderline intellectual functioning. (Tr. at 356.) Mr. Brooks noted that she reported no social activities, and he found that her persistence was moderately deficient and pace was within normal limits. (Tr. at 356.)

In September 2002, Mr. Brooks completed a Mental Residual Functional Capacity (RFC) Form which was based upon his 1999 evaluation. (Tr. at 456-461.) In most mental work-related activities, he rated Claimant as "good" (limited but satisfactory) or "fair" (seriously limited but not precluded). (Tr. at 458-60.) In rating the Claimant's degree of functional limitation in the four broad areas of functioning, he found that she had slight restriction of activities of daily living; slight difficulties in maintaining social functioning; often suffered deficiencies of concentration, persistence, and pace; and experienced one or two episodes of decompensation of extended duration. (Tr. at 460.) During a November 2002 evaluation, Mr. Brooks completed another RFC questionnaire and rated Claimant as

"fair" (limited but satisfactory) or "poor" (seriously limited but not precluded) in most areas. (Tr. at 466-68.) Although the definitions used were different on the two forms, the findings were, for the most part, consistent.

On September 8, 1999, a state agency medical consultant reviewed the record regarding Claimant's mental impairments and determined that a mental RFC assessment was necessary. (Tr. at 358-66.) The consultant determined that Claimant had slight restriction of activities of daily living; slight difficulties in maintaining social functioning; often suffered deficiencies of concentration, persistence, and pace; and experienced one or two episodes of decompensation of extended duration. (Tr. at 365.) These findings were entirely consistent with the opinion of Mr. Brooks in his 1999 evaluation. (Tr. at 460.)

In October 2001, William Brezinski, M.A., licensed psychologist, evaluated Claimant at the request of her attorney. (Tr. at 424-40.) This evaluation was after Claimant's date last insured, but Mr. Brezinski diagnosed depressive disorder, not otherwise specified, moderately severe; generalized anxiety disorder, moderate; and borderline intellectual functioning. (Tr. at 439.) He opined that Claimant had moderate restriction of activities of daily living; marked difficulties in maintaining social functioning; suffered frequent deficiencies of concentration, persistence, and pace; and experienced repeated (three or more) episodes of decompensation of extended duration. (Tr. at 428.) Mr. Brezinski reported that Claimant seemed to have difficulty interacting with others and reported difficult relationships with her significant others. (Tr. at 439.) He found that her judgment was not entirely intact and her insight was moderately impaired. (Tr. at 437.)

At the second administrative hearing, Dr. Michael E. Carter, licensed psychologist, testified as a medical expert. (Tr. at 513.) Upon questioning from the ALJ, Dr. Carter opined that Claimant had

9

no mental impairments. (Tr. at 514.) Dr. Carter questioned the validity of IQ scores determined by both Mr. Brezinski and Mr. Brooks. (Tr. at 517.) Dr. Carter recalculated the scores and testified that the actual scores would be a full scale of 70, a verbal of 70, and a performance IQ of 76. (Tr. at 517.) He noted that there appeared to be some degree of symptom magnification. (Tr. at 520.) Dr. Carter testified that Claimant was best diagnosed with adjustment disorder "probably with a certain degree of anxiety and depression in terms of the mood and the adjustment disorder would probably be to the physical problems she's had from the, from her injury." (Tr. at 520.) He concluded that "I see no reason that, with treatment, that there's anything from a psychological or mental health perspective that would get in the way of her being able to work." (Tr. at 520-21.) Dr. Carter did not offer an opinion on Claimant's degree of limitation in any of the broad areas of functioning. (Tr. at 521.) He did testify that he agreed with Mr. Brooks's findings in the mental questionnaire dated September 20, 2002, with the exception of the rating given to the category "travel in unfamiliar places." (Tr. at 460, 533.) Dr. Carter testified that he would rate this area as "good." (Tr. at 532-33.)

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. § 404.1527(d). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency (5) specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 404.1527(d)(2).

Under § 404.1527(d)(1), more weight is given to an examiner than to a non-examiner. Section 404.1527(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Section 404.1527(d)(2)(I) states that the

longer a treating source treats a claimant, the more weight the source's opinion will be given. Under § 404.1527(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). The Regulations add that because nonexamining sources have no examining or treating relationship with claimant's, the weight given their opinions depends upon "the degree to which they provide supporting explanations for their opinions." Id. § 404.1527(d)(3).

Although he summarized the mental health evidence and the evidence from the medical sources previously discussed, the ALJ failed to properly analyze the medical source opinions pursuant to the requirements of the applicable law and Regulations. (Tr. at 20-22.) The ALJ did not indicate specifically that he gave no weight to the opinions of Mr. Brooks or Mr. Brezinski, nor did he indicate specifically why he apparently did not do so. The ALJ did summarize Dr. Carter's testimony, in which he cited the reasons for disagreeing with the assessments; however, the ALJ only provided this short summary without a discussion of the appropriate factors.

More importantly for purposes of this decision, the ALJ provided no evidence to support his functional limitation ratings. (Tr. at 22.) The ALJ should provide an explanation for these findings, especially in light of the fact that both Mr. Brooks and the state agency medical consultant made the exact same findings with regard to Claimant's degree of limitation in the four broad areas of functioning. (Tr. at 460, 365.) Both Mr. Brooks and the state agency consultant found Claimant more

limited than did the ALJ. With regard to the ALJ's ratings in the areas of social functioning; concentration, persistence, and pace; and episodes of decompensation, there is absolutely no indication of how he determined the degree of limitation. (Tr. at 22.) He cites no evidence in support of these three findings. (Tr. at 22.)

Additionally, in stating that he afforded no weight to the state agency medical consultant's assessment, the ALJ merely noted that "this opinion is not supported by the evidence as a whole including the testimony of the medical expert." (Tr. at 24.) As the opinion was consistent with Mr. Brooks's evaluation, the ALJ apparently afforded it no weight solely because it was inconsistent with Dr. Carter's testimony. (Tr. at 24.) This is not an appropriate evaluation of a medical source opinion. See 20 C.F.R. § 404.1527(f)(2)(I) (2004) (noting that ALJs "must consider findings of State agency medical and psychological consultants . . . as opinion evidence . . . ."). It appears that the ALJ's functional limitation ratings provided a quick way to reach Dr. Carter's ultimate conclusion that there was no severe mental impairment.[4] The ALJ must provide a sufficient explanation, however, for such findings and for discounting other evidence of record.

The ALJ must accompany his decision with sufficient explanation to allow a reviewing Court to determine whether the Commissioner's decision is supported by substantial evidence. "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557©), to include in the text of [his] decision a statement of the reasons for that decision." Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's

---

[4] A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1).

"decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge . . . ." Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985). The United States Court of Appeals for the Fourth Circuit has stated that in Social Security cases, "[w]e cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to *all* of the relevant evidence." Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (emphasis added).

The Commissioner argues that the ALJ correctly concluded that Claimant's alleged mental impairments would not have prevented her from performing basic mental work activities and were therefore not severe. Although the Court might be able to come to this conclusion, it should not do so where the ALJ has not properly explained the determination in his decision and has not explained the reasons for the weight afforded all of the evidence. As such, the undersigned finds that the ALJ's decision is not supported by substantial evidence and this case must be remanded to the Commissioner for full consideration of the evidence pertaining to Claimant's mental impairments and a thorough discussion of the medical source opinions and the weight, if any, afforded such opinions.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court confirm and accept the foregoing findings, **DENY** the Plaintiff's Motion for Summary Judgment; **DENY** Defendant's Motion for Judgment on the Pleadings; **REVERSE** the final decision of the Commissioner; **REMAND** this case with directions that the Commissioner fully consider the evidence pertaining to Claimant's mental impairments in accordance with the prescribed special technique and the requirements of the applicable law and Regulations regarding medical opinion evidence and thoroughly explain the reasons for discounting certain evidence; and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

Date: August 19, 2005.

R. Clarke VanDervort
United States Magistrate Judge